

# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| Terry DeWayne King,<br>    Employee, | ) | Docket No. 2017-06-1364 |
| v. | ) | |
| ARD Trucking Co., Inc.,<br>    Employer, | ) | State File No. 32021-2016 |
| And | ) | |
| Cherokee Ins. Co., Inc.,<br>    Carrier. | ) | Judge Kenneth M. Switzer |

---

## COMPENSATION HEARING ORDER

---

The Court held a compensation hearing in this case on March 20, 2018, addressing three issues. The first is whether Terry King is entitled to temporary partial disability (TPD) benefits from the time he suffered injury, March 17, 2016, until medical providers placed him under restrictions on April 19, 2016. The second issue is whether Mr. King is entitled to an increased award of permanent partial disability (PPD) benefits.[1] The third issue is his entitlement to discretionary costs. For the reasons below, this Court holds Mr. King is not entitled to TPD or an increased PPD award but is entitled to discretionary costs.

### History of Claim

Mr. King works as an over-the-road truck driver for ARD Trucking Co. On March 17, 2016, he injured his shoulder at work. Mr. King testified that, for a month after the injury, he continued working full-time, albeit with difficulty, completing every

---

[1] The Dispute Certification Notice additionally lists compensability and temporary total disability benefits as issues. ARD stipulated to compensability at the compensation hearing. As for temporary total disability benefits (TTD), the parties agreed ARD underpaid Mr. King and that ARD would pay $32.64 beyond the $254.95 it conceded it owed within its Prehearing Statement. Regarding the disputed TPD benefit calculation, the parties designated two periods: period one, from the injury date until April 19; and period two, from July 18 through September 23. ARD agreed that, if the Court held Mr. King were entitled to TPD for period one, the amount ARD owes for that time is $485.31. *See* Ex. 4. As for period two, ARD agreed to pay $263.38. Thus, the present dispute concerns only period one.

assigned run. On April 19, authorized providers placed him on restrictions, and ARD started paying temporary disability benefits.

ARD eventually authorized shoulder surgery. On September 21, Dr. Steven LaDouceur recommended a three-week trial return to full-duty work. On November 2, he placed Mr. King at maximum medical improvement and assessed a three-percent whole-body impairment, which ARD did not contest. However, ARD disputed any increased award based on this rating, pointing to Mr. King's earnings after he returned to work in September.

Before the injury, Mr. King earned $.39 per mile: $.14 for expenses and $.25 as taxable income. ARD paid him the same mileage rate when he returned to full-duty work. However, Mr. King testified that since returning to work, his earnings decreased because he drove fewer miles. Veronica Harden, ARD's vice-president of operations, testified that ARD hired Mr. King to drive a dedicated route, but during his absence, the customer terminated a portion of that route. Mr. King conceded that when he returned to work, he worked fulltime, running all the routes ARD requested and putting in all the hours permitted by federal law. Ms. Harden confirmed that ARD gave Mr. King alternative routes when he returned to full-duty. ARD treated him no differently than it would any other similarly-situated employee, she said, explaining, "The goal is, the more money Terry makes, the more money ARD makes. So our goal is to give him as many miles as we safely and legally can."

Mr. King acknowledged that shortly after he returned to work, he was involved in an accident that resulted in a loss of "safety pay," per company policy. The policy reduced his taxable mileage rate to $.235 for 180 days, but he returned to the previous mileage rate in April 2017. Ms. Harden testified that all drivers learn during orientation of a possible temporary safety-pay loss if they have an accident. Mr. King admitted the accident and the safety-pay loss.

*Arguments*

For clarity, the Court identifies the specific issues and parties' positions as follows.

Mr. King sought TPD for the time between the date of injury and when he first received treatment on April 19. He argued that his disability began the moment he suffered injury at work, regardless of whether he was under restrictions. ARD countered that the Workers' Compensation Law requires that restrictions be in place to receive TPD, and that Mr. King worked at full-duty, earning his full wages for this period – "period one."

Mr. King asserted entitlement to the 1.35 multiplier because he earned less than 100 percent of his pre-injury wages at the end of the initial compensation period. He compared the stipulated pre-injury average weekly wage to the amounts ARD paid him after September 21, 2016. ARD countered that when Mr. King returned to work, it paid him the same mileage rate it paid before the injury and offered a sufficient number of routes, so that he worked full-time for all the hours he was legally able to work. The loss of safety pay was due to Mr. King's negligence rather than his disability. Therefore, the Court should cap his PPD award.

Finally, Mr. King sought discretionary costs for the court reporters' expenses for his deposition, Dr. LaDouceur's, and at the compensation hearing, as well as Dr. LaDouceur's deposition fee. He argued that despite providing medical and temporary disability benefits, ARD disputed compensability throughout the case. The post-discovery Dispute Certification Notice listed compensability as an issue. Since the medical records did not contain causation statements mirroring the statutory definition of "injury," he needed to depose Dr. LaDouceur to support a compensability finding. In response, ARD objected only to the costs of Dr. LaDouceur's deposition, arguing that it filed organized, Bates-stamped copies of the medical records along with a table of contents well in advance of his deposition, and they contained all the necessary information to prosecute Mr. King's claim. Thus, the deposition was of no additional benefit, and ARD should not be responsible for its cost.

## Findings of Fact and Conclusions of Law

The employee in a workers' compensation claim has the burden of proof on all essential elements of the claim. *Scott v. Integrity Staffing Solutions,* 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015). "[A]t a compensation hearing where the injured employee has arrived at a trial on the merits, the employee must establish by a preponderance of the evidence that he or she is, in fact, entitled to the requested benefits." *Willis v. All Staff,* 2015 TN Wrk. Comp. App. Bd. LEXIS 42, at *18 (Nov. 9, 2015).

Turning first to Mr. King's request for TPD for period one, "[t]emporary restrictions assigned by physicians during an injured worker's medical treatment do not establish an entitlement to continued temporary disability benefits *if the employee is able to work without loss of income.*" *Frye v. Vincent Printing Co.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 34, at *16 (Aug. 2, 2016)(emphasis added). Here, by his own admission, Mr. King worked full-time immediately following the work injury, albeit with pain. ARD correctly observed that Mr. King was not under restrictions during this time, but more importantly, Mr. King suffered no income loss. The Court agrees and holds Mr. King failed to satisfy his burden to show by a preponderance of the evidence that he is entitled to temporary disability benefits for this timeframe.

As for PPD, the parties agreed to a three-percent impairment rating and a compensation rate of $453.51.[2] This equates to 13.5 weeks times $453.51, or $6,119.82, as Mr. King's original award. *See* Tenn. Code Ann. § 50-6-207(3)(A).

After the passage of 13.5 weeks, Mr. King became eligible to seek an increased award provided he met the statutory criteria. The Workers' Compensation Law states that the original award may be increased if, at the end of the initial period of compensation, the employee returned to work and is receiving "*wages* or a salary that is less than one hundred percent (100%) of the wages or salary the employee received from the employee's pre-injury employer on the date of injury." *Id.* at -207(3)(B) (emphasis added). The provision further states, "*If appropriate,* the injured employee's award . . . shall be increased by multiplying the original award by a factor of one and thirty-five one hundredths (1.35). *Id.*(emphasis added).

The Appeals Board examined a case presenting somewhat similar facts in *Marshall v. Mueller Co.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 74 (July 11, 2016). The Board offered a thorough history of the statutory increased benefit factors and recent, pre-Reform Act case law, noting that previously "wages" did not mean "average weekly wage" but rather "hourly rate of pay for an employee who is compensated on an hourly basis." *Id.* at *12. Here, Mr. King asserted that the Court should compare the pre-injury average weekly wage with his total weekly post-injury earnings. *Marshall* rejected that approach. So does this Court. The Court holds that, given the compensation structure in place at ARD, it should consider his pre-and post-injury mileage rates. No one disputes these were equivalent until Mr. King's October accident that resulted in his lowered mileage rate.

When the injured employee in *Marshall* returned to work, under a collective bargaining agreement, she no longer earned a "summer hours' bonus" increased hourly rate. The trial court cited the statute and held that an increase would not be "appropriate," capping the award. The Board affirmed, reasoning that the wage reduction was the result of a policy that is effective every year and applied "to all employees working in certain departments." *Id.* at *25.

Here, Mr. King's initial compensation period ended on February 5, 2017, 13.5 weeks after reaching maximum medical improvement. He did not dispute the accident following his return to work, which resulted in the loss of safety pay after the initial compensation period ended. Therefore, the Court holds that increasing his award would be inappropriate, given that his negligence precipitated the diminished rate of pay.

---

[2] The parties agreed at the compensation hearing that Mr. King's average weekly wage is $680.23, resulting in a compensation rate of $453.51.

The Court is likewise unpersuaded by Mr. King's argument regarding the loss of the dedicated route. ARD made diligent attempts to ensure he worked full-duty by supplanting that loss with other routes, which he completed. Thus, Mr. King failed to show by a preponderance of the evidence that he is entitled to the requested PPD increase.

Finally, as for Mr. King's request for discretionary costs, Rule 54 of the Tennessee Rules of Civil Procedure authorizes these awards for "reasonable and necessary" court reporter expenses and expert witness fees for depositions and trials. From a review of the technical record, ARD did not stipulate to compensability until it filed its Prehearing Statement approximately eight days before the compensation hearing. The Court applauds ARD for its compliance with the Court's standing order on medical records, as well as rules requiring organizing, indexing and page-numbering the records. However, doing so does not amount to a stipulation to information contained within those records as facts. Given the circumstances, the Court finds Mr. King acted reasonably in taking Dr. LaDouceur's deposition and awards all the requested costs.

**IT IS, THEREFORE, ORDERED** as follows:

1. ARD or its workers' compensation carrier shall provide Mr. King with lifetime medical treatment for his injuries under Tennessee Code Annotated section 50-6-204. Mr. King or Dr. LaDouceur shall furnish all medical bills to ARD or its workers' compensation carrier for prompt payment.

2. Mr. King is entitled to $352.87 in TTD and $263.28 in TPD for "period two."

3. Mr. King is entitled to an original award of $6,119.82 in permanent partial disability benefits but no increased benefits.

4. Mr. King's attorney is entitled to an attorney's fee of twenty percent of the total award of $6,735.97 or $1,347.19.

5. The above awards are subject to a child-support lien. The parties are responsible for allocation of the payment of the remaining benefit after payment of attorney fees toward satisfaction of the lien.

5. Notwithstanding the method and timing of payment to the Plaintiff/Employee as above, and under Tennessee Code Annotated section 50-6-207(6), the Court finds the Employee is fifty years old (D.O.B.: 1-17-66) on the date of maximum medical improvement (MMI: 11-2-16) for his work injury to the left shoulder, and according to the mortality tables contained in Table VI (Mortality Table) of Volume 13 of the Tennessee Code Annotated has an expectation of 31.07 years of life remaining, or 372.84 months. Of the $6,119.82 gross amount of permanent

5

partial disability benefits awarded to the Plaintiff/Employee by the Court, $0.00 constitutes consideration for future medical expenses, $1,223.96 represents a statutory twenty-percent attorneys' fee, and $350.00 constitutes reimbursable expenses/discretionary costs. After payment of the attorneys' fees and litigation costs, the Plaintiff/Employee will receive the net amount of $4,545.86, which represents his permanent vocational disability for the March 17, 2016 work injury to the left shoulder. For purposes of apportioning compensation attributable to this Order, the sum is considered to be compensation for a permanent work injury to the left shoulder. Accordingly, and because the permanent impairment will affect Mr. King for the rest of his life, even though paid in a lump sum, the amortized monthly benefit/Social Security Disability "offset" received by the Employee is $4,545.86 divided by 372.84 months or **$12.19 per month** for the remainder of his life and represents a future income replacement, beginning on the date of the work injury (DOI: 3-17-16). This paragraph is intended for Federal Social Security purposes only and not for any other purpose, including but not limited to, disability retirement benefits from the Tennessee Consolidated Retirement System, under Tennessee Code Annotated section 50-6-207, as amended by Public Chapter 919, effective July 1, 1996.

6. ARD shall pay Mr. King's discretionary costs totaling $1,495.05.

7. The filing fee of $150.00 is taxed to ARD under Rule 0800-02-21-.07 of the Tennessee Compilation Rules and Regulations, payable within five business days of entry of this Order.

8. ARD shall file form SD-1 within five business days of entry of this Order.

9. Absent an appeal of this order, it shall become final thirty days after issuance.

**ENTERED March 27, 2018.**

**JUDGE KENNETH M. SWITZER**
**Court of Workers' Compensation Claims**

**APPENDIX**

EVIDENCE
1. Deposition transcript of Dr. LaDouceur, including medical records
2. First Repost of Injury
3. Choice of Physician form
4. Employee's revised calculations of taxable earnings and compensation rate
5. ARD Trucking Payroll RECAP Report
6. Notice of Seizure of Assets, Tennessee Department of Human Services
7. Carrier's Check Log
8. Copies of temporary disability payment endorsed checks
9. Time cards
10. Claims adjuster letter recapping total wage loss benefits
11. Mr. King's routes, September 14, 2015-December 31, 2017
12. Mr. King's routes, September 27, 2016-February 10, 2017
13. All Payroll Wages from Return to Work Date of 9/27/2016 to 3/9/2018-Showing AWW $686.26

TECHNICAL RECORD
1. Petition for Benefit Determination and Complaint
2. Employee's Pre-Mediation Position Statement
3. Dispute Certification Notice (Employee's and Employer's additional issues attached)
4. Post-Discovery Dispute Certification Notice (Employee's additional issues)
5. Employee's Position Statement and Pre-Trial Brief
6. Employee's Witness and Exhibit List
7. Post-Trial Motion for Discretionary Costs
8. Employee's Position Statement and Pretrial Brief Addendum
9. Employer's Prehearing Statement
10. Employer's Response to Employee's Post-Trial Motion for Discretionary Costs
11. Employer's Witness and Exhibit List
12. March 26, 2018 email regarding discretionary costs

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent to these recipients by the following methods of service on March 27, 2018.

| Name | Certified Mail | Fax | Regular mail | Email | Sent to |
|---|---|---|---|---|---|
| Michael Underhill, employee's counsel | | | | X | mlunderhill@bellsouth.net |
| Stephen Heard, employer's counsel | | | | X | skheard@cclawtn.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

8